IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBIN M. KLEINER,

        Plaintiff,

v.                                                        CIV 99-787 MV/KBM

KENNETH S. APFEL,
Commissioner of Social Security,

        Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

This matter is before the Court on Plaintiff's (Kleiner's) Motion to Reverse or Remand Administrative Agency Decision *(Doc. 6)*. The Commissioner of Social Security issued a final decision denying Kleiner's application for supplemental security income benefits under Title XVI of the Act. 42 U.S.C. § 1382c(a)(3). Kleiner also urges that the Court reopen her 1989 claim for disability insurance benefits under Title II. Having considered the arguments, pleadings, administrative record and relevant law, I find that the motion is well taken and recommend that it be granted. Specifically, I recommend that the Court reverse the ALJ's decision and award Title XVI benefits, and remand the case to the Commissioner for further proceedings on the Title II benefits.

1

**A. Facts/Background.**

In 1989, Kleiner, now 42 years old, applied for disability insurance benefits pursuant to Title II of the Social Security Act. Her claim was denied, and Kleiner failed to appeal that decision.

Plaintiff then applied for supplemental security income under Title XVI on October 25, 1994 on the basis of learning disability and epilepsy. *AR 132, 140*. The Administrative Law Judge (ALJ) denied Kleiner's application after a hearing. However, the Appeals Council vacated the decision and remanded the matter for further proceedings February 4, 1989 for the ALJ to reconsider the demands of her past relevant work in light of her residual functional capacity. *AR 489-901*.

After the second hearing, the ALJ found that Kleiner could perform past relevant work and again denied Kleiner's Title XVI application on August 27, 1998. The ALJ also refused to reopen her 1989 Title II disability insurance claim. After the remand, the ALJ incorporated her previous opinion into the second one, except for the step-four analysis. The Appeals Council declined review of the ALJ's decision, making it the final decision of the Commissioner for purposes of review by this Court under 42 U.S.C. § 405(g). For brevity, I will discuss other facts as they become relevant to the issues.

**B. Standard of Review and Applicable Law**

Review in social security cases is limited to considering whether there is substantial evidence in the record to support the Secretary's decision and whether the correct legal standards were applied. *Hamilton v. Secretary of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir.1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.  *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).   I am not permitted to reweigh the evidence or substitute my judgment for that of the Secretary.  *Hamilton,* 961 F.2d at 1500.  "As long as substantial evidence supports the ALJ's determination, the Secretary's decision stands." *Id.*

To qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity.  *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993) (construing 42 U.S.C. § 423(d)(1)(A)).  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  20 C.F.R. §§ 404.1520 and 416.920.  The sequential evaluation process ends if at any step the Commissioner finds that the claimant is or is not disabled.  *Thompson*, 987 F.2d at 1486.

At the first four levels of the sequential evaluation process, the claimant must show that: (1) she is not engaged in substantial gainful employment; (2) she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities; (3) her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1;  or (4) she is unable to perform work she had done in the past.  20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience.  *Id*.

### C. Issues and Analysis

*1. <u>The ALJ erred in concluding that Kleiner did not meet the listings</u>.*

To meet the § 12.05(C) Listing of Impairments, a claimant must have a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional a significant work-related limitation of function." 20 C.F.R. pt. 404, subpt. P., app. 1, § 12.05(C). To meet the § 12.05(D) Listing, a claimant must have a valid verbal, performance, or full scale IQ of 60 through 70 resulting in two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

20 C.F.R. pt. 404, subpt. P., app. 1, § 12.05(D). "In cases where more than one IQ is customarily derived from the test administered, *i.e.*, where the verbal, performance, and full scale IQs are provided as on the WAIS [Wechsler Adult Intelligence Scale], the ***lowest*** one of these is used in conjunction with listing 12.05." §12.00(4) (emphasis added).

When Kleiner was 10 years old, she achieved a valid verbal IQ of 65 and full scale IQ of 67, which is valid despite being an old test. *See* § 12.00 (4)(D). In 1995, Psychologist Dr. Lawrence Goodlive found that she had a valid verbal IQ of 68 and performance IQ of 77 on the WAIS-R test. *AR 187, 465-66.* In 1996, Clinical Psychologist Dr. Edward Siegel's WAIS-R test revealed a valid verbal IQ of 65 and full scale IQ of 68. *AR 498-99.*

Despite the obvious corroboration from three different sources that Kleiner's verbal IQ

4

was well within the range of the Listings, the ALJ disregarded the scores on two grounds: (1) Dr. Goodlive believed that the performance IQ of 77 was the "best estimate" of Kleiner's overall intellectual functioning; and (2) other IQ tests performed in the 1970s showed verbal and performance IQ numbers in the high 70s and low 80s. *AR 465*. The ALJ also speculated that Kleiner's scores rose and fell depending on whether she wanted a job or wanted Social Security benefits. The ALJ implied that Kleiner's previous involvement with cocaine suggested that Kleiner would "use every means possible to obtain [drugs]." *AR 465*.

Yet, it is uncontroverted that Kleiner received verbal IQ scores well within the range of the Listings and no one has questioned the validity of the scores. Dr. Goodlive's statement, that Kleiner's 77 performance IQ was the "best estimate" of her intellectual functioning, does not repudiate the valid verbal IQ score of 68. As Dr. Goodlive added, "There was not, in fact, a great deal of variation in her subtest scores, suggesting fairly low skills in most areas." *AR 187*.

Furthermore, the ALJ's reliance on the 1974 test results, from a test administered by a school counselor, was misplaced. Section 12.00(4)(D) declares that such tests should be administered by psychologists or psychiatrists trained to do so. Accordingly, the IQ tests administered by the school counselor have no value as medical opinions, and the ALJ should not have relied upon them.

The ALJ also discounted Dr. Siegel's opinion that Kleiner's ability to perform work related functions was limited by her interpersonal style and intellect ("fair" or "poor to none" in all abilities except carrying out simple instructions and maintaining personal appearance). In doing so, the ALJ mischaracterized the record. Although Dr. Siegel noted that initially Kleiner was nominally cooperative, she became "cooperative and performed adequately" after she requested

5

that he personally administer the tests. *AR 430*. Furthermore, my review of the record revealed nothing that directly contradicted Dr. Siegel's findings; rather, it supported his opinion. *AR 187*. Accordingly, insofar as the ALJ's rejected Dr. Siegel's opinions simply because he was not an attending doctor, the ALJ erred.

Moreover, I cannot find any evidence to justify the ALJ's comment that Kleiner was manipulating the results of the tests to obtain benefits. Likewise, the ALJ's belief that Kleiner was applying for benefits to buy cocaine likewise has no foundation from any evidence whatsoever in the record. While Kleiner had admitted to having used cocaine in the past, no evidence suggested she still was using it. To the contrary, all the evidence on the point corroborated that she was clean. *AR 43-45, 70-72, 410-12*.[1]

For the foregoing reasons, the ALJ's step three analysis is erroneous as it concerns Kleiner's IQ scores.[2] Kleiner meets the § 12.05 Listing, and she should have been awarded Title XVI benefits. Given the delay that has already occurred in this case, and because there is no apparent reason for further factual development, I recommend outright reversal and an award of Title XVI benefits.

*2. Plaintiff may be entitled to reopen her 1989 Title II disability insurance claim.*

A federal court does not have jurisdiction to review the Commissioner's decision not to reopen an earlier adjudication absent a colorable constitutional claim. *Nelson v. Secretary of*

---

[1] In this light, the ALJ's determination that drug abuse was a factor in Kleiner's § 12.08 personality disorder must also fail. *AR 466*. Accordingly, the ALJ's earlier finding that Kleiner also suffered from a § 12.08 personality disorder stands.

[2] Because I find that Kleiner's impairments met or equaled the listings, I need not address the alternative assertion of error in finding that she could return to her past relevant work.

*Health & Human Servs.*, 927 F.2d 1109 (10th Cir. 1990).   Kleiner argues that the ALJ erred in refusing to reopen her *pro se* 1989 disability insurance claim on the grounds that her mental impairment prevented her from understanding the notice of appeal.  Therefore, she argues, the ALJ's application of *res judicata* denied her constitutional right to due process.

There is substantial evidence,  in the form of Dr. Siegel's opinion, *AR 435-39,* that Kleiner's mental limitations prevented her from understanding her rights.  Although it is the ALJ's duty is to resolve conflicts in the record, she may reject a physician's opinion if she gives specific, legitimate reasons for doing so.  *Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir.1988); *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 810 (10th Cir. 1991).

Indeed, the ALJ relied on evidence which could have indicated that Kleiner gave contradictory reasons for failing to appeal.  On different occasions, Kleiner said that she did not appeal the claim because she was going through a divorce, was emotionally unstable, and because her learning disability prevented her from filing an appeal. *AR 181*.  She also asserted that she did not remember receiving the initial determination. *AR 178.*

On the other hand, these facts do not necessarily create a contradiction.  They may all be fairly resolved by assuming the truth of Kleiner's mental disability.  Thus, substantial evidence could support a decision either way on this question.  However, the ALJ's conclusion on the issue is suspect given her persistent belief of Kleiner's unsubstantiated continued drug use.  Accordingly, I recommend that the Court remand the matter to allow an ALJ to resolve any conflicts in the evidence concerning whether Kleiner has stated a colorable constitutional claim.  Given the record, I further recommend that a different ALJ hear the remand to avoid any appearance of bias. *AR 13, 15,16, 91-93.*

### D.  Conclusion.

For the foregoing reasons, I recommend that the Court reverse the ALJ's decision as to supplemental security income and remand the matter to the Commissioner to award Kleiner all the benefits to which she is entitled under Title XVI.  I further recommend that the Court remand the case to the Commissioner for further proceedings, with a different ALJ, to resolve conflicts in the evidence concerning whether Kleiner has stated a colorable constitutional claim in the denial of her 1989 application for disability insurance benefits.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the United States District Court pursuant to 28 U.S.C. § 636 (b)(1).  **A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE

**Counsel for Plaintiff:**        Patricia Glazek
                                  Santa Fe, NM


**Counsel for Defendant:**        Cicely Jefferson
                                  Dallas, TX

                                  Raymond Hamilton
                                  Albuquerque, NM